***********
The Full Commission has reviewed the prior Opinion and Order based upon the record of the proceedings before Deputy Commissioner Baddour and the assignments of error and briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Order, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with modifications.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, William H. Sykes, sustained a compensable injury to his back on October 4, 1990. The parties entered into a Form 21 Agreement that was approved on March 11, 1991. Opinions and Awards were filed in this matter by then Deputy Commissioner Neill Fuleihan on May 16, 1994, Deputy Commissioner W. Bain Jones, Jr., on July 15, 1997, and the Full Commission on October 1, 1999. A decision by the North Carolina Court of Appeals was rendered on February 20, 2001.
2. In its October 1, 1999 Opinion and Award, the Full Commission ordered that payment of benefits to plaintiff be suspended due to his failure to comply with the Commission's prior orders regarding medical treatment and vocational assistance, and provided that defendants are entitled to a credit for benefits paid to plaintiff since November 30, 1998. The Full Commission's decision was affirmed by the Court of Appeals. Plaintiff has not given Notice of Appeal from, nor petitioned the North Carolina Supreme Court for certiorari, following the entry of the Court of Appeal's February 20, 2001 decision, and thus the same is binding upon the parties.
3. Among the issues presented to the Commission and the Court of Appeals in the above-referenced prior decisions were the issues of designation of a physician to direct plaintiff's medical care, whether or not plaintiff is disabled as a result of the injury of October 4, 1991, what medical treatment plaintiff was entitled to receive as a result of said injury, and whether plaintiff should be permitted to re-open the evidence in the case for the purpose of taking testimony from Dr. George Charron, or introducing evidence of alleged fraud, misrepresentation or other inappropriate conduct on the part of defendants or their counsel. On March 6, 2001, the Commission received and filed plaintiff's Form 33 dated March 2, 2001 (subsequent to the entry of the Court of Appeals decision) requesting a hearing on the issues of payment for medical expenses and treatment, payment for permanent and total disability, payment for scarring, payment for sexual dysfunction with spouse and neurogenic bladder. These issues are the same as those raised on prior Forms 33 and/or records introduced into evidence at previous proceedings. Plaintiff alleged that the reason the parties had been unable to agree on these issues was that "Defendants have committed fraud by conspiracy, misrepresentation, perjury and obstruction of justice in order to obtain an incorrect and unjust decision from the Commission."
4. On May 17, 2001, defendants filed a Motion to Dismiss plaintiff's Form 33 on multiple grounds, including that the Commission lacks jurisdiction over the issues raised by plaintiff and that the previous Court of Appeals and Industrial Commission decisions are binding on the parties under the doctrine of res judicata. Defendants submitted in support of their Motion the plaintiff's interrogatory responses that were signed and verified on April 27, 2001.
5. In the above-referenced responses to interrogatories, plaintiff was asked to list the documents which he contended supported the allegations contained in his Form 33. All of the documents listed by plaintiff were either a part of the record before the Commission at the time of its previous decisions, or documents that plaintiff had attempted to introduce at prior hearings and which the Commission declined to accept into evidence.
6. Plaintiff's interrogatory responses indicate that he is attempting through his current request for hearing to revisit issues previously decided by the Commission and the North Carolina Court of Appeals.
7. During oral arguments, Deputy Commissioner Baddour specifically questioned plaintiff as to whether the issues he desires to raise, and the evidence he desires to introduce, have been previously considered by the Commission and the N.C. Court of Appeals. Based upon the plaintiff's responses, the written and oral arguments of the parties, and the record in this matter, the Full Commission finds that the issues plaintiff now desires to raise are the same issues that were previously considered by the Commission and the N.C. Court of Appeals. The Full Commission further finds that the evidence plaintiff now desires to introduce was either received into evidence at prior hearings, or is evidence that was denied admission by a Deputy Commissioner, and which the Full Commission declined to re-open the record to accept.
8. It is noted that the Full Commission's Opinion and Award filed October 1, 1999 provides that "The suspension of plaintiff's benefits shall continue until, in the opinion of the Executive Secretary, Tracey Weaver, plaintiff's refusal to comply with vocational rehabilitation efforts and with the treatment of Dr. Hanson has ceased." Accordingly, the plaintiff is not barred from pursuing a reinstatement of his benefits by showing that his failure to comply has ceased. However, in the present case, plaintiff seeks only to re-litigate the issues and evidence upon which the Full Commission rendered its decision on October 1, 1999.
9. As defendants noted in their counsel's November 11, 2002, letter,
 "The Commission should not even require an oral argument to affirm Deputy Commissioner Baddour's ruling that Plaintiff is not entitled to start the litigation process anew just because he does not like the Court's prior rulings. Mr. Sykes admitted at the hearing before Mr. Baddour that all of his evidence has been presented to the Full Commission at the time of the prior proceeding."
10. This case is best described in the words of counsel for defendants:
 "Mr. Sykes injured his back in October of 1990. His claim was accepted as compensable and medical treatment was provided. By the time we had the hearing before Deputy Commissioner Neill Fuleihan, I believe, in 1993, if memory serves me correctly, Mr. Sykes had actually been evaluated by — somewhere in the range of twenty different physicians — some approved, some not approved — specialists ranging from orthopaedists, neurosurgeons, neurologists. The issue decided by former Deputy Commissioner Fuleihan was Mr. Sykes' request for surgery. My clients paid for extensive medical treatment and paid temporary total disability for Mr. Sykes, but finally the matter required a hearing when Mr. Sykes wanted surgery on his back. My clients declined to provide that because of the opinions of multiple physicians that his condition did not require surgery and an evaluation by a psychologist that indicated he was not likely to benefit from surgery. Deputy Commissioner Fuleihan did order us to pay for the surgery. We didn't appeal. Mr. Sykes had his surgery by Dr. Charron. After the surgery was performed, Dr. Charron, who is a physician that both Mr. Sykes and the defendants had agreed upon as the treating doctor at that time, entered one of the most unusual notes in his reports I've ever seen from a physician — and this is in the record of the evidence in the case, that Dr. Charron stated the only thing he learned by performing that surgery was that there was not a surgical problem there to begin with. After a period of post-operative recovery, he dismissed Mr. Sykes from his care, indicated he was at maximum improvement, rated him with permanent disability, and released him to return to work. Mr. Sykes underwent a functional capacity evaluation. Defendants provided vocational assistance. Mr. Sykes did not cooperate with vocational assistance. Nonetheless, defendants were able to identify some prospective positions for Mr. Sykes, and Dr. Charron approved work restrictions for Mr. Sykes based upon which defendants then moved the Commission to terminate payment of compensation under a Form 24 proceeding. That was heard by then Special Deputy Commissioner Amy Pfeiffer. Ms. Pfeiffer did not grant the motion to terminate because there had been no prior order for Mr. Sykes to cooperate with vocational rehabilitation. She did in very specific and clear terms, however, order him to cooperate with voc rehab. I don't think there's any dispute in this case that Mr. Sykes did not comply with that order. He's very frankly and very boldly, both in his briefs and his oral arguments and his correspondence to me and to the Commission, acknowledged that he refused to meet with the rehab assistant, that he refused to attempt to locate employment. This matter then came on for hearing before Deputy Commissioner Bain Jones on the issue of his noncompliance with Deputy Commissioner Pfeiffer's prior order and on an issue raised by Mr. Sykes in terms of designation of a treating physician. The physician who had performed his surgery when Mr. Sykes began under his care was located in Virginia. He's since relocated to Raleigh, so it did not appear to be appropriate either in terms of convenience or reasonable distance for Mr. Sykes or from the standpoint that Dr. Charron had nothing further to offer the patient for Mr. Sykes to continue under his care. The defendants offered an alternative physician, Dr. Snyder (phonetic). Plaintiff wanted Dr. Allen Towne to be his treating physician. Dr. Towne had given a statement that in his opinion Mr. Sykes was permanently and totally disabled, and that was the position Mr. Sykes took at the hearing before Deputy Commissioner Jones. Deputy Commissioner Jones ordered Mr. Sykes to cooperate with treatment by the physician designated by the defendants. From that point, Mr. Sykes filed multiple motions from everyone — with Deputy Commissioner Jones, the Executive Secretary's Office, then Chairman Howard Bunn, I believe there was even a letter addressed to the docket director — made multiple motions and attempts to reverse the finding of Deputy Commissioner Jones regarding treating physician. Subsequently, Dr. Snyder declined to treat Mr. Sykes further, and Dr. Robert Hanson was designated as treating physician by order of the Commission. This matter went up to the Full Commission, and at that time, Mr. Sykes filed numerous motions, again, to change the treating doctor. He raised issues concerning the propriety of the procedure in front of Deputy Commissioner Jones, specifically he raised the issue of the fact that Dr. Charron did not testify at the hearing and the circumstances regarding that. He leveled personal accusations against me. All of these matters were presented to the Full Commission. Mr. Sykes requested the opportunity to take the testimony of Dr. Charron of the Full Commission. He asked them to take action with respect to the allegations against me and my clients. As Your Honor is well aware, the Full Commission has the authority on appeal from a decision by a Deputy Commissioner to order the taking of additional evidence, to conduct further hearings as it sees fit, and the Commission declined to do that in this case within their discretion. The fact that they did not allow Mr. Sykes to proceed as he wanted to does not mean he has not been given a full and fair opportunity to litigate his case. Those requests were considered, they were not granted, Mr. Sykes appealed to the North Carolina Court of Appeals, and in an unanimous decision, the Court of Appeals affirmed the Full Commission, including affirming the Commission's decision to terminate (suspend) Mr. Sykes' compensation benefits, based upon his failure to comply with the previous orders of this Commission, and also approving the Commission's directions with respect to who his treating doctors were. To this date, Mr. Sykes has not returned to those doctors, to my knowledge. To this date, Mr. Sykes has not made any effort to cooperate with vocational rehabilitation despite communications from my office reminding him that we are still prepared to provide that to him. The Form 33 which Mr. Sykes filed in — with the Industrial Commission indicates on his face — on its face that the matters which Mr. Sykes asked this Court to consider are the same matters which have been heard over and over again. He alleges fraud, conspiracy, misrepresentation, perjury, and obstruction of justice on the part of the defendants and me. That has all been addressed by the Full Commission and by the Appellate Court. He asked for payment of compensation from the date the Full Commission ordered his benefits terminated through permanently, again, asking this Court to reverse the finding of the Full Commission, that he was not entitled to benefits at that time and he was not permanently and totally disabled. He has asked for payment for sexual dysfunction and a neurogenic bladder. The previous Form 33's filed in the case will show that that has been an issue at prior hearings. Deputy Commissioner Jones's Opinion and Award makes specific reference to the medical records of Dr. E. M. Page, which were a part of the evidence before Deputy Commissioner Jones, and those are the records which Mr. Sykes, again, wants to raise in support of this claim. Those issues have been litigated and have been decided. Mr. Sykes was given interrogatories by my office and asked to further detail what it was that he wanted to present to the Commission via a hearing. I would direct the Commissioner's attention to Mr. Sykes' response to interrogatory number 3. His interrogatory answers are an exhibit to our motion. In that, Mr. Sykes says the relief he seeks is that the defendants caused Deputy Commissioner Jones and the Industrial Commission to file an incorrect and unjust decision. In response to interrogatory number 6, he says the decision would have been different had he been allowed to present additional evidence or had we not allegedly committed acts. The same thing in responses to twelve and fifteen. It's clear from the Form 33 and from the discovery responses, as well as from Mr. Sykes' affidavit, that the whole purpose of the requested hearing is to try to now persuade a Deputy Commissioner to substitute his or her judgment for the Commission — for the judgment of the Full Commission and the North Carolina Court of Appeals, something which the Court lacks authority to do. The Commission has ruled on these issues. Mr. Sykes acknowledges that his purpose is to reverse that ruling. His avenue to reverse that ruling was his appeal, which was denied by unanimous decision. Your Honor, the other issues — or the issues raised by Mr. Sykes in terms of why the Commission should reverse the previous decisions include a number of matters over which this Court would lack jurisdiction. The alleged allegations of conspiracy, fraud, and other allegations — again, they have been dealt with and we contend that the Court cannot hear them for that reason, but the only recourse that any I submit to you that one cannot review the record in this case without reaching the conclusion that if we had five hundred hearings in this case, Mr. Sykes would not reach the point where he felt he had had an adequate opportunity to have his day in court, and that is not a reason to allow this matter to continue to be pursued. The issues have been decided. Public policy dictates that the parties and the public are entitled to rely on the decisions of the Commission and the Appellate Courts. My clients are entitled to, at some point, no longer have to incur expenses for defense costs and hearing costs to rehear the same issues. This Commission is entitled not to have its resources and time and hearing rooms occupied by people rehearing the same issues they've had before."
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The issues that plaintiff desires to address via his Request for Hearing have been previously litigated at hearings before the North Carolina Industrial Commission and on appeal to the North Carolina Court of Appeals. Accordingly, the Full Commission is bound by the doctrine ofres judicata or law of the case, and plaintiff may not re-litigate those issues at this time or at any other time.
2. The North Carolina Industrial Commission lacks subject matter jurisdiction over a number of the issues raised by plaintiff, including the issues of fraud, conspiracy, perjury and obstruction of justice.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Plaintiff shall pay the costs.
This 12th day of November 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER